# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
September 4, 2025 Session

## SARAH ELIZABETH WOODRUFF EX REL. ETHAN WOODRUFF ET AL. v. FORD MOTOR COMPANY ET AL.[1]

**Appeal by Permission from the Court of
Circuit Court for Knox County
No. 2-486-14 William T Ailor, Circuit Court Judge**

_____

### No. E2023-00488-SC-R11-CV

_____

In this appeal, we hold that this Court's holding in *Coffman v. Armstrong International, Inc.*, 615 S.W.3d 888 (Tenn. 2021), does not mandate dismissal as a matter of law of the plaintiff's failure-to-warn claims. Here, the plaintiff filed a product liability lawsuit under the Tennessee Products Liability Act against the defendant manufacturer of a child's booster seat. The lawsuit claimed the defendant was required to warn of risks of using the booster seat in combination with a seatbelt extender, manufactured by another defendant, but failed to do so. The defendant moved for summary judgment on the grounds that *Coffman* bars the plaintiff's failure-to-warn claims for risks associated with using the defendant's product with another manufacturer's product. The trial court granted the defendant's motion for summary judgment and dismissed the plaintiff's claim. The Court of Appeals affirmed and held that *Coffman* bars the plaintiff's claims as a matter of law. We reverse the Court of Appeals and clarify that the holding in *Coffman* does not mandate dismissal of the plaintiff's failure-to-warn claims as a matter of law. Accordingly, we reverse and remand the case to the Court of Appeals for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Reversed; Remanded to the Court of Appeals**

HOLLY KIRBY, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., SARAH K. CAMPBELL, and MARY L. WAGNER, JJ., joined. DWIGHT E. TARWATER, J., not participating.

_____

[1] This case was consolidated for purposes of oral argument with a separate related appeal, *Sarah Elizabeth Woodruff v. Ford Motor Company*, No. E2023-00889-SC-R11-CV (hereinafter *Ford*).

Richard E. Collins and Dan Channing Stanley, Knoxville, Tennessee, for the appellant, Sarah Elizabeth Woodruff.

C. Gavin Shepherd, Knoxville, Tennessee, and Jonathan Judge, Chicago, Illinois, for the appellee, Dorel Juvenile Group.

W. Bryan Smith, Memphis, Tennessee and Brian G. Brooks, Greenbrier, Arkansas, for the amici curiae, Tennessee Trial Lawyers Association.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

This case arises from a tragic three-vehicle accident in Knoxville, Tennessee. On August 23, 2013, Plaintiff/Appellant Sarah Woodruff's husband, Benjamin Woodruff, was driving his 2012 Nissan Juke. Their two minor children were in the vehicle with him, both in the back seat. The Woodruffs' younger child, four-year-old Kate, sat behind her father on the driver's side in a forward-facing child seat with a five-point harness. Their older child, six-year-old Ethan, sat on the passenger side in a forward-facing high-backed booster seat.

Mr. Woodruff drove the Juke eastbound on John Sevier Highway and stopped in the center turn lane near the intersection with Austin Park Lane. At the same time, a Chevrolet Blazer driven by a drug-impaired driver was going westbound on the same highway. As Mr. Woodruff prepared to turn left, the driver of the Chevrolet Blazer negligently crossed the centerline and crashed head-on into Mr. Woodruff's Juke. The collision caused the Juke to spin into the path of a 2001 Chrysler minivan, which hit the Juke on the driver's side.

Mr. Woodruff died from injuries he sustained in the accident. Kate suffered some bruises and cuts but was otherwise physically unharmed.

Six-year-old Ethan sustained serious and disabling injuries in the crash, including head trauma and a broken femur. As a result, Ethan required surgery, hospitalization, and significant rehabilitation services.

At some point prior to the accident, Mr. Woodruff and Plaintiff Sarah Woodruff purchased Ethan's booster seat, a Pronto model child restraint device manufactured by Defendant/Appellee Dorel Juvenile Group ("Dorel").[2] The booster seat came with an owner's manual. The owner's manual contained the following:

---

[2] The record is not clear on when the Woodruffs purchased the booster seat.

Check vehicle instructions for more information about air bag/child restraint use.

****

If your seat belt is too short, contact your vehicle dealer for a seat belt extender. Do not route the seat belt any way except as shown in the instructions.

Mr. Woodruff purchased the 2012 Nissan Juke involved in the subject accident in February 2013. The owner's manual for the Juke included the following:

Only NISSAN seatbelt extenders, made by the same company which made the original equipment seatbelts, should be used with NISSAN seatbelts.

Adults and children who can use the standard seatbelt should not use an extender. Such unnecessary use could result in serious personal injury in the event of an accident.

Never use seatbelt extenders to install child restraints. If the child restraint is not secured properly, the child could be seriously injured in a collision or sudden stop.

After he purchased the Juke, Mr. Woodruff experienced problems buckling Ethan's booster seat into the seatbelt system in the Juke's backseat. The receiving end of the seatbelt buckle was recessed in a way that made it difficult for Ethan to buckle himself into his booster seat without Mr. Woodruff's assistance. To address the issues surrounding the recessed seatbelt buckle, on March 13, 2013, Mr. Woodruff purchased a seatbelt extender on eBay from a retailer called Seatbelt Extender Pros, LLC.[3]

The seatbelt extender Mr. Woodruff purchased was a product of Ford Motor Company ("Ford"). It was intended for use by large adults who do not physically fit in a standard-sized seatbelt restraint system.[4] Ford commissioned the seatbelt extender to be used in the front seat of certain Ford Focus models.

Ford's component manufacturer, Autoliv Safety Technologies, designed the extender to comply with federal safety standards applicable to seatbelt restraint systems. Ford reviewed and approved the design of the extenders and Autoliv manufactured them using Ford's directions and specifications. Autoliv then sent the extenders to another Ford

---

[3] Seatbelt Extender Pros purchased the extender from an individual vendor named Derek Martin, who purchased it from his employer, an authorized Ford dealership that obtained the seatbelt extender directly from Ford.

[4] It is undisputed that Ethan did not fall within the size range for the extender's intended use.

vendor to be encased in Ford-branded packaging. The packaged extender Mr. Woodruff purchased was distributed directly by Ford to its authorized dealerships, for them to sell or give away to Ford customers.

The specific Ford seatbelt extender Mr. Woodruff bought was manufactured by Autoliv in 2010. It contained a label[5] with the following:

> Do not use seat belt extender –
> Unless it is physically required to wear the vehicle's safety belt.
> If it causes the distance between the front edge of the extender buckle and
> the center of the occupant's body to be less than 6 inches.
> Incorrect use of extender may result in serious injury. Use extender only to
> the vehicle and seation [sic] position it was provided for.

Mr. Woodruff installed the seatbelt extender in the backseat of the Juke. When the August 13, 2013 accident occurred, Ethan was wearing the Ford seatbelt extender with the Dorel booster seat.

In July 2014, Plaintiff Sarah Woodruff filed a complaint in the Circuit Court for Knox County, on behalf of herself and her minor children. Among other claims, the original complaint brought personal injury claims under the Tennessee Products Liability Act (TPLA) against Ford and Seat Belt Extender Pros for the injuries Ethan sustained in the accident.[6]

Later, in January 2018, Ms. Woodruff amended her complaint to add other defendants, including Dorel. Eventually, the Plaintiff settled or non-suited all of her claims except for those against Ford and Dorel.

The Plaintiff's product liability claims against both Ford and Dorel were based on alleged failure to warn. Specifically, the Plaintiff claimed that Ford and Dorel were required to warn or instruct consumers that a seatbelt extender should never be used in conjunction with a child's booster seat, but they failed to do so. The Plaintiff alleged that their failure to warn of the risks associated with using a seatbelt extender with a booster seat caused Ethan's injuries because the seatbelt extender failed to restrain the booster seat during the collision.

---

[5] Ford also submitted proof that the packaging for the seatbelt extender told users to "not use unless physically required to wear the vehicle's safety belt."

[6] Ms. Woodruff also sued the driver of the Blazer for negligence and wrongful death. After discovery, the trial court granted summary judgment in favor of Ms. Woodruff on her negligence claim against the driver of the Blazer.

- 4 -

The Plaintiff's product liability claim against Dorel focused on the warnings and instructions in the owner's manual for the Pronto booster seat. During discovery, it was generally undisputed that, apart from its use with a seatbelt extender, the booster seat was a sound product. It was also undisputed that Dorel had not conducted any tests to determine if the booster seat was safe to use with a seatbelt extender. The Plaintiff's experts criticized the warnings and instructions in the owner's manual for the booster seat, arguing that they indicated to consumers that seatbelt extenders could be used with the booster seat, despite the absence of proper testing or warnings about the risks associated with such use.

Similarly, in its product liability claim against Ford, the Plaintiff did not assert that the Ford seatbelt extender was defectively designed or manufactured for its intended purpose. It was generally undisputed that the seatbelt extender was fit for its intended purpose of restraining very large adults. The only defect identified by the Plaintiff's expert witnesses was the lack of adequate warnings on the seatbelt extender label. The Plaintiff asserted that, for several years before the Woodruffs' accident, Ford knew its seatbelt extenders were being misused with children's booster seats but never updated or corrected the extender's warning label.

In October 2018, Ford and Dorel both moved for summary judgment on the Plaintiff's failure-to-warn claims. Both argued, among other things, that they had no duty to warn of risks associated with another manufacturer's product. Dorel argued specifically that manufacturers have no duty to warn of the dangers of using their products with another manufacturer's product. Ford argued it was neither a manufacturer nor a seller within the meaning of the TPLA, and it should not be held liable for injuries from a seatbelt extender manufactured by Autoliv and sold by a third-party vendor.

In response, the Plaintiff argued both Ford and Dorel failed to provide adequate warnings about a known misuse of their respective products. In a cross-motion for partial summary judgment, as well as her response to Ford's summary judgment motion, the Plaintiff further argued that Ford was a manufacturer or seller under the TPLA because it controlled the design and distribution of the seatbelt extender.

In November 2019, the trial court granted Dorel's motion for summary judgment. It found that the Plaintiff had submitted no proof that Dorel's booster seat was defective, and it concluded that Ethan's injuries were caused by the failure of the seatbelt extender. Because Dorel did not manufacture the seatbelt extender, the trial court concluded, Dorel had no duty to warn of the risks of using its booster seat with a seatbelt extender.

As to Ford, the trial court denied Ford's motion for summary judgment and granted the Plaintiff's cross-motion for partial summary judgment. The trial court acknowledged there was a factual dispute about Ford's control over the design of the seatbelt extender, including its warning label. But it nevertheless concluded that Ford's proprietary interest

in the schematic for the seatbelt extender and Ford's control over the distribution for the seatbelt extender made Ford a manufacturer, seller, or distributor of the seatbelt extender under the TPLA.

Meanwhile, a separate case, *Coffman v. Armstrong International, Inc.*, had been making its way through the appellate courts. The Court of Appeals issued its decision in *Coffman* in July 2019. *See* No. E2017-01985-COA-R3-CV, 2019 WL 3287067 (Tenn. Ct. App. July 22, 2019).

Later in November 2019, not long after the Court of Appeals' decision in *Coffman*, the Plaintiff cited *Coffman* in a motion to reconsider the trial court's prior order granting summary judgment in favor of Dorel. The Plaintiff argued in the motion that the earlier grant of summary judgment to Dorel should be reversed because the Court of Appeals in *Coffman* rejected the argument that, as a matter of law, manufacturers have no duty to warn about risks caused by another manufacturer's product.

The trial court felt that the claims of the plaintiff in *Coffman* were distinguishable from the Plaintiff's claims in this case. But it nonetheless believed that the Court of Appeals' ruling in *Coffman* made it necessary to reconsider the earlier grant of summary judgment to Dorel.

In February 2020, the trial court vacated its previous grant of summary judgment in favor of Dorel. In response, in March 2020, Dorel filed a motion requesting the trial court's permission for interlocutory appeal.

In March 2020, Ford filed another motion for summary judgment. Citing the trial court's earlier ruling in favor of Dorel, Ford argued that it was entitled to dismissal as a matter of law. Ford contended it had no duty to warn consumers about risks associated with using the seatbelt extender with another manufacturer's product. In response, the Plaintiff argued that Tennessee had never adopted a brightline rule that manufacturers have no duty to warn of risks associated with other manufacturers' products.

In November 2020, the trial court denied Ford's second motion for summary judgment. The trial court's order did not directly address Ford's argument that it had no duty under the TPLA to warn of another manufacturer's product. Instead, the trial court reiterated its previous ruling that Ford was a "manufacturer" or "seller" of the seatbelt extender under the TPLA.

In January 2021, this Court issued its opinion in *Coffman*, reversing the Court of Appeals and holding that the defendants in that case could not be "held liable for injuries resulting from products they did not make, distribute, or sell." 615 S.W.3d 888, 900 (Tenn.

2021). This led both Ford and Dorel to renew their arguments in the trial court that manufacturers have no duty to warn of risks related to another manufacturer's product.

In their trial court filings, Ford and Dorel argued that *Coffman* foreclosed the Plaintiff's failure-to-warn claims by establishing that, as a matter of law, manufacturers have no duty to warn of risks associated with another manufacturer's product. The Plaintiff argued that her claims were distinguishable from *Coffman* and that *Coffman* did not foreclose claims based on foreseeable misuse.

In March 2023, the trial court reinstated its previous grant of summary judgment to Dorel, concluding that Dorel "had no duty to warn with regard to the seatbelt extender that it did not manufacture or sell." However, the trial court denied summary judgment to Ford. Because Ford distributed and sold the seatbelt extender, the trial court found, *Coffman* did not require it to grant summary judgment in favor of Ford.

The Plaintiff appealed the trial court's reinstatement of summary judgment in favor of Dorel.[7] In May 2024, the Court of Appeals issued an opinion affirming the trial court's decision to grant summary judgment to Dorel. *Woodruff ex. rel. Woodruff et al. v. Ford Motor Co. et al.*, No. E2023-00488-COA-R3-CV, 2024 WL 2738197, at *9 (Tenn. Ct. App. May 28, 2024) (hereinafter *Dorel*). Based on this Court's opinion in *Coffman*, the Court of Appeals held that Dorel was entitled to judgment as a matter of law.[8] *Id.* at *8. The Court of Appeals determined that its holding pretermitted other issues raised by Dorel on appeal.[9] *Id.* at *6, 9.

We granted the Plaintiff permission to appeal.[10]

---

[7] After the trial court granted Dorel's motion, the Plaintiff's claim against Ford proceeded to a jury trial. But the jury trial against Ford resulted in a mistrial. After the mistrial, the trial court granted Ford's request for permission to seek an interlocutory appeal of the order denying its motion for relief on summary judgment. The Court of Appeals granted Ford's request for interlocutory appeal and reversed the trial court's decision to deny summary judgment to Ford. *Ford*, No. E2023-00889-COA-R9, 2024 WL 2270675, at *10 (Tenn. Ct. App. May 20, 2024).

[8] The Court of Appeals also rejected the Plaintiff's alternative argument that, even if Dorel had no duty to warn under *Coffman*, it could still be liable under the TPLA for material misrepresentation. *Dorel*, 2024 WL 2738197, at *9.

[9] These issues were: (1) whether Dorel is entitled to summary judgment based on abnormal use of the booster seat at issue; and (2) whether Dorel is entitled to summary judgment based on lack of proximate cause. *Dorel*, 2024 WL 2738197, at *6.

[10] The Plaintiff's request for permission to appeal in *Dorel* came before this Court in the same time period as the Plaintiff's request to appeal the Court of Appeals' decision in favor of Ford. *See Ford*, 2024 WL 2270675, at *10, *perm. app. granted*, No. E2023-00889-SC-R11-CV, 2024 WL 4660583 (Tenn. Oct. 24, 2024) (per curiam).

## ANALYSIS

This case is an appeal from a grant of summary judgment. "We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

On appeal, the Plaintiff raises a single issue, as stated in the Plaintiff's Rule 11 application:

> Whether *Coffman v. Armstrong International, Inc.*, 615 S.W.3d 888, 897 (Tenn. 2021), defeats Plaintiff's claim against Dorel for failing to warn of the dangers associated with using a seatbelt extender to install the subject booster seat, when Dorel negligently and recklessly instructed consumers to "contact your dealer for a seat belt extender" if "your vehicle belt is too short."

Thus, the Plaintiff asks us on appeal to address whether *Coffman* requires dismissal as a matter of law of the Plaintiff's failure to warn claim against Dorel relating to its booster seat used in combination with a seatbelt extender manufactured and sold by another manufacturer.[11]

As background for our consideration of this issue, we briefly review pertinent statutory provisions. The Tennessee Products Liability Act (TPLA) governs actions for personal injury, death, or property damage caused by defective or dangerous products. Tenn. Code Ann. § 29-28-102(6) (2012). Theories of liability based on a "breach of or failure to discharge a duty to warn or instruct" fall within the scope of the TPLA. *Id*.

Under the TPLA, "[a] manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." *Id.* § 29-28-105(a).

---

[11] In its brief to this Court, Dorel refers to issues that were pretermitted by the Court of Appeals' resolution of the *Coffman* issue. As discussed below, we decline to address these issues and instead confine our Opinion to the issue raised by the Plaintiff in its request for permission to appeal.

A product is in "defective condition" when its condition "renders it unsafe for normal or anticipatable handling and consumption." *Id.* § 29-28-102(2). An "unreasonably dangerous" product is a product that is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics," or "would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition." *Id.* § 29-28-102(8). In addition, "[i]f a product is not unreasonably dangerous at the time it leaves the control of the manufacturer or seller but was made unreasonably dangerous by subsequent unforeseeable alteration, change, improper maintenance or abnormal use, the manufacturer or seller is not liable" under the TPLA. *Id.* § 29-28-108.

In this case, the Plaintiff claims that Dorel's booster seat is unreasonably dangerous when used in combination with a seatbelt extender. She asserts that the owner's manual endorsed this misuse of Dorel's product, and that Dorel had a duty to warn consumers against the misuse by including adequate warnings and instructions in the owner's manual.

Dorel argues that the Plaintiffs' claims fail as a matter of law under this Court's holding in *Coffman*. Dorel describes *Coffman* as holding that a manufacturer such as Dorel has no duty to warn of dangers associated with combining its product with another manufacturer's product.

Thus, to resolve the issue in this appeal, we must examine *Coffman*.

### *Coffman*

In *Coffman*, a retired equipment mechanic alleged that he developed mesothelioma from exposure to asbestos-containing materials in his workplace. 615 S.W.3d at 891. In his work, the plaintiff mechanic repaired and replaced equipment that included pumps, valves, steam traps, gaskets and piping. *Id.* He asserted that the materials needed and used to repair and maintain the equipment contained asbestos. *Id.* at 892. The asbestos-containing materials were neither manufactured nor sold by the equipment manufacturers; the materials were integrated into the equipment after it was sold by the equipment manufacturers. *Id.*

The plaintiff filed a product liability lawsuit against several defendants, including the manufacturers of equipment the plaintiff repaired and maintained in his work. *Id.* at 891–92. The lawsuit claimed the defendant equipment manufacturers were liable under the TPLA for failing to adequately warn users about the risks associated with integrating asbestos-containing materials into the equipment post-sale. *Id.* at 892. Though the asbestos-containing materials were manufactured and sold by other entities without the involvement of the defendant equipment manufacturers, the plaintiff alleged that the

equipment manufacturers nevertheless had a duty to warn because it was foreseeable that the equipment would be repaired and maintained using asbestos-containing materials. *Id.*

The equipment manufacturers moved for summary judgment on the grounds that they had no duty to warn of the risks of asbestos exposure arising from products that they did not make, sell, or distribute. *Id.* The trial court granted summary judgment in favor of the defendants on the failure-to-warn claims, and the Court of Appeals reversed. *Id.* at 892–93. This Court granted permission to appeal on the question of whether the equipment manufacturers "had a duty to warn of the dangers associated with the post-sale integration of asbestos-containing materials manufactured and sold by others." *Id.* at 894.

The Court in *Coffman* answered the question on appeal by interpreting the language of the TPLA. *Id.* at 895. It noted first that the TPLA specifically states that manufacturers and sellers are not liable for injury caused by a product unless it is "in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." *Id.* (quoting Tenn. Code Ann. § 29-28-105(a)). Based on its interpretation of this provision, the Court held that the TPLA "places a duty to warn on a manufacturer or seller to warn about the condition of the product only if it was defective or unreasonably dangerous at the time the manufacturer transfers control of the product." *Id.* at 896.

Second, *Coffman* pointed out that the definitions of "unreasonably dangerous" and "defective condition" in the TPLA "link a defendant's liability to the defendant's own product." *Id.* at 896–97 (citing Tenn. Code Ann. § 29-28-102(2), -102(8)). Observing that the TPLA definition of "defective condition" says that "the product's condition 'renders *it* unsafe for normal or anticipatable handling and consumption,'" *Coffman* noted, "[t]he '*it*' refers to the manufacturer's own product." *Id.* at 897 (quoting Tenn. Code Ann. § 29-28-102(2)). In *Coffman*, the plaintiff mechanic's injuries were allegedly caused by "exposure to asbestos." *Id.* at 891. But "none of the [equipment manufacturers'] products contained asbestos when they were under the [equipment manufacturers'] control." *Id.* at 895. The asbestos-containing materials were manufactured and sold by other entities without the involvement of the defendant equipment manufacturers, and they were added after the equipment manufacturers transferred control of the equipment. *Id.* at 891–92, 897.

Under those circumstances, the Court held, the equipment manufacturers had no duty to warn of the dangers of asbestos. The Court rejected the plaintiff's argument that the "TPLA anticipates that manufacturers are liable for the foreseeable alterations, changes, improper maintenance, or abnormal use of their products" and found it "dispositive that the end-products at issue on this appeal were *neither made nor sold by the Equipment Defendants*." *Id.* at 897. *Coffman* emphasized that this holding was "based on the language of the TPLA." *Id.* at 899. *Coffman* also cautioned that its holding was limited: "Again, this appeal deals strictly with the [equipment manufacturers] in situations where there was

post-sale integration of asbestos-containing parts manufactured and sold by others." *Id*. at 897.

## Whether *Coffman* Mandates Dismissal

Here, the Court of Appeals found that the holding in *Coffman* mandated dismissal of the Plaintiff's failure-to-warn claims against Dorel:

> In this case, Plaintiff argues that Dorel's booster seat was defective because its included instruction manual failed to adequately communicate the danger of using a seat belt extender with a booster seat. Throughout her pleadings about the danger that Dorel should have warned against, Plaintiff references other products, namely, seat belt extenders. However, as our Supreme Court recognized, the TPLA's provisions "link a defendant's liability to the defendant's own product, not the product of another manufacturer." *Id.* at 897. The *Coffman* majority was not persuaded that the Equipment Defendants' products were defective because they later were integrated with unsafe asbestos-containing replacement parts.
>
> ****
>
> Here, what made the booster seat unsafe and what created a dangerous condition was when the purchaser added, aftermarket and from a third party, a Ford seat belt extender made for the front seat of a Ford Focus, in violation of Nissan's explicit warning never to use a seat belt extender to install a child restraint. These circumstances are more attenuated than those under which the *Coffman* majority declined to impose a manufacturer's duty to warn under the TPLA.
>
> ****
>
> We also conclude that *Coffman*'s explicit holding that "under the TPLA, manufacturers have no duty to warn with respect to products manufactured and sold by others" applies to the facts of this action and to Plaintiff's theory of Dorel's liability. *Coffman*, 615 S.W.3d at 899. We do not read *Coffman*'s holdings to be limited to cases about the post-sale integration of asbestos-laden component parts, as Plaintiff suggests. Based on *Coffman*'s guidance and the relevant TPLA provisions, we have determined that Dorel did not owe Plaintiff a legal duty to warn about another manufacturer's product under the circumstances of this case. The existence of a legal duty is an essential element of a failure to warn claim under the TPLA. Therefore, Dorel is entitled to summary judgment on Plaintiff's failure to warn claim asserted in her fourth amended complaint.

*Dorel*, 2024 WL 2738197, at *8. Thus, the Court of Appeals interpreted *Coffman* broadly, as barring any failure-to-warn claim where the manufacturer's original product is used in

conjunction with another manufacturer's product. In this appeal, Dorel likewise views *Coffman* broadly, as controlling the disposition of the Plaintiff's claims, and it urges us to affirm the holding of the Court of Appeals.

We agree that there are facial similarities between *Coffman* and the instant case, in that both involve failure-to-warn claims in the context of a purchaser's use of the defendant's product with another product. But there are significant differences as well. Importantly, *Coffman* involved the end-consumer's post-sale integration of another manufacturer's asbestos-containing product into the equipment manufacturers' non-dangerous product, to create a new "end-product." *Coffman*, 615 S.W.3d at 894. In contrast, here, the end-consumer used two sound end-products together.

*Coffman* reflects a particular factual subset of cases involving the combination of two products. There are numerous other subsets:

> Some common contexts in which [combined product] cases arise include: (1) when completed products are used in conjunction with one another; (2) when a third-party manufacturer outfits an incomplete product with component parts post-sale; (3) when new parts replace old ones; and (4) when a manufacturer creates a "bare-metal" product, which is one without necessary insulation or packing that is added on at a later time, either by the bare-metal manufacturer itself or a third-party such as another manufacturer or buyer.

David Judd, *Disentangling* DeVries: *A Manufacturer's Duty to Warn Against the Dangers of Third-Party Products*, 81 La. L. Rev. 217, 229 (2020).

Different factual circumstances may be governed by different principles on duty and liability.[12] For example, this Court has recognized some circumstances in which the TPLA may impose liability on the manufacturer of a component part for a defective final product. *Davis v. Komatsu Am. Indus. Corp.*, 42 S.W.3d 34, 42–43 (Tenn. 2001) (citing Tenn. Code Ann. §§ 29-28-102(4), -106(b), and -108; *Restatement (Third) of Torts: Products Liability* § 5(a)–(b) (Am. L. Inst. 1998)). This contrasts with *Coffman*'s holding under the TPLA in a different factual context. *See Coffman*, 615 S.W.3d at 895–97 ("[T]he TPLA does not create a duty or liability for defendants for the post-sale incorporation of products containing asbestos . . . incorporated into that equipment after it left their control.").

While this Court has not previously considered the type of claim at issue here, other jurisdictions have. Several treat claims like those in *Coffman*—where the end-consumer

---

[12] *See* Richard E. Kaye, *Am. L. Prod. Liab.* 3d § 32:9 (2024) (describing the differing principles applicable to cases involving (1) component parts, (2) replacement parts, (3) a sound product which is compatible with a defective product, (4) two sound products which together create a dangerous condition, and (5) a product which increases the risks posed by another manufacturer's product).

integrates an inherently dangerous or defective product into a sound product—differently from claims like those here—where two independently sound products, used by the end-consumer together, create a risk of harm. *Compare, e.g., O'Neil v. Crane Co.*, 266 P.3d 987, 1004–05 (Cal. 2012) (holding that equipment manufacturers had no duty to warn of risks associated with post-sale integration of asbestos into their products, and distinguishing from case where the combination of two sound products caused a dangerous condition), *with Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger Co.*, 28 Cal. Rptr. 3d 744, 750–51 (Cal. Ct. App. 2004) (finding that the combination of two sound products caused a dangerous condition). *See also Rastelli v. Goodyear Tire & Rubber Co.*, 591 N.E.2d 222, 225–26 (N.Y. 1992) ("This is not a case where the combination of one sound product with another sound product creates a dangerous condition about which the manufacturer of each product has a duty to warn. . . . we conclude that Goodyear had no duty to warn about the use of its tire with potentially dangerous multipiece rims produced by another . . . ." (citing *Ilosky v. Michelin Tire Corp.*, 307 S.E.2d 603 (W. Va. 1983))); *Macias v. Saberhagen Holdings*, 282 P.3d 1069, 1075–76, 1080 (Wash. 2012) (discussing the "generally recognized exception[]" to the no-liability rule where "two sound products combine to create an unreasonably unsafe condition"); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 498 n.7 (Wash. 2008) (*en banc*) (noting that "there are some cases where the combination of two sound products creates a dangerous condition, and both manufacturers have a duty to warn" (citations omitted)).[13]

Against that backdrop, we note that *Coffman* itself cautioned that its holding was limited, addressing only "[w]hether there is a duty to warn of the dangers associated with the post-sale integration of asbestos-containing parts that are manufactured and sold by others." *Coffman*, 615 S.W.3d at 894. Later, *Coffman* cautioned "[a]gain" that it dealt "strictly" with "situations where there was post-sale integration of asbestos-containing parts manufactured and sold by others."[14] *Id*. at 897.

Factual differences between *Coffman* and the instant case could be material to the defendant's duty to warn. In *Coffman*, the injuries were allegedly caused by asbestos. But

---

[13] One treatise recognizes, "although a manufacturer generally has no duty to warn about another manufacturer's product when the first manufacturer produces a sound product that is compatible for use with a defective product of the other manufacturer, it has been noted that there may be cases in which the combination of one sound product with another sound product creates a dangerous condition about which the manufacturer of each product has a duty to warn." Kaye, *supra* note 12, at § 32:9. *See also* Judd, *supra*, at 228–38 (distinguishing cases involving the integration of an inherently dangerous product from cases involving sound products that create a risk when used together).

[14] "The *Coffman* Court's narrow opinion only addresses the Appellee's claims regarding the asbestos integrated post-sale by another party, and rejected public policy considerations and the foreseeability analysis that previously typified deliberations for assigning duty in Tennessee." Penelope M. Brooks, *Strict Products Liability*—Coffman v. Armstrong International, Inc.*: Are the People Powerless Against Prominent Products?*, 53 U. Mem. L. Rev. 807, 818 (2023).

the defendants' products did not contain asbestos when they left the defendants' control; the asbestos was in materials that the end-consumer integrated into the defendants' products post-sale, after the defendants' products left their control. *Coffman*, 615 S.W.3d at 895. *Coffman* noted that the text of the TPLA tied a defendant-manufacturer's liability to its control over its own product, emphasizing that the term "it" in the statutory definition of "defective condition" referred to the defendant's product, not the defendant's product "plus some later-included asbestos-containing material." *Id*. at 897 (citing Tenn. Code Ann. § 29-28-102(2)). In *Coffman*, it was "dispositive" that the allegedly dangerous "end-products" were "*neither made nor sold by*" the defendant equipment manufacturers. *Id*.

But here, neither product is inherently dangerous on its own. It is generally undisputed that both the Ford seat belt extender and the Dorel booster seat are sound products when used independently for their intended purposes. The Plaintiff here alleges that the end-consumer's use of two sound and distinct products together creates a dangerous condition—a risk of harm that neither product poses on its own. Under the Plaintiff's theory of the case, both the seat belt extender and the booster seat contributed to Ethan's injuries. Both defendants allegedly failed to warn of the foreseeable dangers of their combined use.

Unlike in *Coffman*, the Plaintiff here alleges that the injuries resulted from foreseeable misuse of Dorel's *own product*, the booster seat.[15] The Plaintiff's theory of liability is that the owner's manual for the booster seat did not adequately warn of a misuse that was foreseeable to Dorel *when the booster seat left Dorel's control*. And Dorel points to no language in the TPLA that relieves Dorel of a duty to warn simply because the foreseeable misuse of its product involves another manufacturer's product as well.[16]

---

[15] Based on combined-use cases from other jurisdictions, Ms. Woodruff asserts that Dorel's duty to warn should be analyzed under a foreseeable harm framework that encompasses both intentional use and foreseeable misuse of two sound products. *See, e.g.*, *Goins v. Clorox Co.*, 926 F.2d 559 (6th Cir. 1991) (applying Tennessee law) (foreseeable misuse); *Kirsten v. W.M. Barr & Co.*, No. 97 C 0002, 1997 WL 136328, at *2–3 (N.D. Ill. Mar. 19, 1997) (applying Illinois law) (intended use); *Martin v. Interstate Battery Sys. of Am., Inc.*, No. 12-CV-184-JED-FHM, 2016 WL 4275740, at *16–17 (N.D. Okla. Aug. 12, 2016) (applying Oklahoma law) (foreseeable misuse); *Tellez-Cordova*, 28 Cal. Rptr. 3d at 748–49 (intended use with another manufacturer's product); *Barbosa v. Hopper Feeds, Inc.*, 537 N.E.2d 99, 102–03 (Mass. 1989) (intended use); *Ilosky*, 307 S.E.2d at 609–10 (foreseeable misuse).

[16] Dorel argues that *Davis*, 42 S.W.3d at 40–43, supports a reading of the TPLA that "does not require manufacturers to anticipate the consequences of combining their product with that of another manufacturer, provided that their own product functions as intended." Respectfully, it does not. *Davis* outlined the contours of liability for component part manufacturers when a final integrated end-product is defective and causes harm. *See Davis*, 42 S.W.3d at 35, 40–43 (adopting *Restatement (Third) of Torts: Products Liability* § 5(b) & cmt. e). Neither *Davis* nor *Coffman* interpreted the TPLA in situations like the one here, where each manufacturer's product is rendered defective when used in conjunction with another manufacturer's product.

- 14 -

Here, the Court of Appeals interpreted *Coffman* as broadly barring any failure-to-warn claim where the defendant's original product is used with another manufacturer's product. Respectfully, *Coffman* did not adopt such a rule. *Coffman* only held that the manufacturers of non-defective equipment were not liable for failing to warn of dangers caused by an end-consumer's post-sale integration of another manufacturer's inherently dangerous asbestos products. 615 S.W.3d at 899. The limited holding in *Coffman* does not foreclose the possibility that manufacturers of independently sound products have a duty to warn of a foreseeable misuse of their own product that renders the product unreasonably dangerous.

Thus, the Plaintiff's claims in this case differ significantly from those in *Coffman*, and those differences *may* be material to the duty analysis. For example, a duty to warn *might* exist if it was foreseeable when the product left Dorel's control that Dorel's product would be used in combination with another product in a way that rendered Dorel's product unsafe or unreasonably dangerous. *See* Tenn. Code Ann. § 29-28-102(2) (defining "[d]efective condition" to mean "a condition of a product that renders it unsafe *for normal or anticipatable handling* or consumption" (emphasis added)); *id.* § 29-28-105(a) ("A manufacturer or seller of a product shall not be liable . . . unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller."); *id.* § 29-28-108 ("If a product is not unreasonably dangerous at the time it leaves the control of the manufacturer or seller but was made unreasonably dangerous by subsequent *unforeseeable* alteration, change, improper maintenance or abnormal use, the manufacturer or seller is not liable" (emphasis added)).

To be clear, we are *not* holding that Dorel had a duty to warn consumers not to use its booster seat with Ford's seatbelt extender. That issue is separate from the question before us in this appeal. Here, we are asked to clarify "whether *Coffman* . . . defeats Plaintiff's claim against Dorel for failing to warn of the dangers associated with using a seatbelt extender to install the subject booster seat." We hold it does not.

Accordingly, we conclude that the trial court and the Court of Appeals erred in holding that *Coffman* controls the outcome of this case.

**Other Issues**

In its brief, Dorel discusses alternative bases for granting it summary judgment that were pretermitted by the Court of Appeals' holding that *Coffman* barred the Plaintiff's claim.[17] These alternative arguments were not included in the Court's order granting

---

[17] As noted above, these issues are whether summary judgment was proper based on Mr. Woodruff's abnormal use of the booster seat or lack of proximate cause.

permission to appeal, and they were not included in Dorel's statement of the issues on appeal, so we respectfully decline to address them in this Opinion.

The parties' appellate briefs include arguments on other issues that may be relevant to questions of duty or liability, such as whether booster seats can be safely used with seatbelt extenders, the adequacy of the warnings, the mechanics of Ethan's injuries, and the legal effect of the warnings in the Nissan Juke manual. We decline to address these arguments or opine on whether Dorel had a duty to warn based on the circumstances of this case.  Our ruling is limited to the narrow question of whether *Coffman* defeats Ms. Woodruff's claim against Dorel.  For the reasons explained above, we hold that it does not.

Accordingly, we remand this case to the Court of Appeals for further proceedings consistent with this Opinion.

## CONCLUSION

We hold that this Court's holding in *Coffman v. Armstrong International, Inc.*, 615 S.W.3d 888 (Tenn. 2021), does not mandate dismissal as a matter of law of the Plaintiff's failure-to-warn claim against defendant Dorel.  Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the Court of Appeals to consider pretermitted issues and any other proceedings not inconsistent with this Opinion.

s/Holly Kirby, Justice
HOLLY KIRBY, JUSTICE